JOSEPH A. WINIARSKI *vs.* LEON MEYER, INC. *et al.*

JUNE 30, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

126

BAKER, J. This bill in equity was brought by a prospective buyer against the respondent corporation and its vendee to compel them to convey to complainant certain real estate situated in the city of Pawtucket in this state in pursuance of an alleged agreement between the complainant and the corporation, and to have a deed from such corporation to said vendee declared null and void, and for incidental injunctive relief. After a hearing the amended bill of complaint was denied and dismissed by a justice of the superior court and from the entry of a decree to that effect complainant has duly prosecuted his appeal to this court.

The amended bill alleges among other things that the respondent Leon Meyer, Inc., now Meyer Saddlery Corp., hereinafter referred to as the corporation, is located in New York City; that said corporation owned certain real estate in the city of Pawtucket and desired to sell the same; that it engaged William E. Perry of that city as its exclusive agent for the purpose of securing a purchaser; that on September 1, 1951 complainant agreed to buy such property

for the sum of $7,000 and on or about that date paid Perry $100 as a deposit and part payment on the purchase price; that the latter notified the corporation of the sale which was confirmed and approved by it; and that complainant had the title to the property searched.

The bill further alleges that on or about September 4, 1951 the respondent vendee offered Perry $500 to enter into a conspiracy to void such sale with intent to defraud complainant and thereafter, on or about September 12, 1951, with the same intent and purpose, offered Perry $1,500; that being unable to induce the latter to act the said vendee persuaded the corporation to enter into such conspiracy by paying it $1,500 over and above the $7,500 offered by complainant for the property; that said vendee received a deed therefor dated October 6, 1951 which was thereafter recorded in Pawtucket; and that on October 15, 1951 complainant offered to pay the balance of the purchase price agreed upon and is ready, willing and able so to do, but the respondents refuse to perform their part of the agreement. In their answers respondents in substance admit the formal allegations of the amended bill, leave complainant to his proof as to certain others, but deny the material and controversial allegations therein.

Speaking generally, there is little conflict as to the facts appearing in evidence excepting the dates upon which certain communications were made by the broker Perry to the corporation and those made by the respondent vendee to it and to the broker. There was evidence that complainant first learned on August 31, 1951 that the property in question was for sale by seeing thereon Perry's sign to that effect. On the following day, which was Saturday, he consulted with Perry and gave him a deposit of $100, which was retained, on the purchase price. The receipt for that deposit was signed by Perry individually. At that time he had not received an exclusive listing from the corporation and he told complainant: "I haven't received my exclusive card

back yet from Mr. Meyer. Now, I says, until I receive that back, I says, I am not guaranteeing you anything."

There was evidence that such listing card, which had been prepared by Perry, had previously been sent by him to the corporation. September 3, 1951 was Labor Day and it is agreed that no mail was delivered in Pawtucket on that date. The vice-president of the corporation testified that the card was signed by him in New York City on September 4 and it was to be mailed that day or the following day, as he had been out of the city over the holiday. Perry apparently notified the corporation of complainant's deposit by letter dated September 2, 1951. There was also evidence that a purchase and sale agreement between complainant and the corporation was sent to the latter by Perry about September 14 or 15 for execution but it was never returned to him by the corporation.

It further appeared in evidence that the respondent vendee either on September 1 or early on September 4, 1951, in any event before Perry received the exclusive listing, talked with him about the purchase of the property and first offered him $7,500 and then $8,500 therefor, the latter of which amounts he had offered to the corporation four years earlier. In answer to these offers Perry said to the vendee: "It's not ready yet." It appears that the vendee's action in this connection was not communicated to the corporation by Perry. Since he was unable to get any satisfactory response from the latter, within a few days, the vendee communicated with the corporation several times by telegram in regard to buying the property. About September 20, 1951 and also on September 25 or 27 he went to New York City and consulted with an officer of the corporation. On the last occasion he made a deposit of $500 as a binder to purchase the property for $8,500. On October 6, 1951 he again went to New York City, the sale was then consummated and the deed to him from the corporation was executed.

The trial justice having seen and heard the witnesses

testify was required to pass upon the evidence and to draw from it such inferences as he deemed reasonable and proper. In deciding the cause he found that there was no credible evidence which would warrant a finding that the corporation had ratified Perry's acts in dealing with complainant regarding the sale of the property so as to make them in legal effect those of the corporation. He also found that there was no credible evidence to support complainant's claim of conspiracy and fraud on the part of either respondent, and that such a claim was in fact without foundation.

The complainant argues that in so deciding he misconceived the evidence, drew improper inferences therefrom, and disregarded the weight thereof. Upon consideration it is our opinion that complainant's contention is not correct. It is settled that a decision of a trial justice in an equity cause on conflicting evidence ordinarily will not be disturbed by this court unless it is clearly wrong or fails to do justice between the parties. *Caton* v. *Caton,* 74 R. I. 208; *Kerr* v. *McKenna,* 57 R. I. 252. In the instant cause we do not find that to be the case or that the trial justice misconceived the evidence or drew unreasonable inferences therefrom.

There remains for consideration, however, the question whether in the circumstances Perry as agent or broker for the corporation had any authority in fact or law to bind it on a purchase and sale agreement. The complainant argues that Perry had such authority particularly under the exclusive listing given him by the corporation which reads as follows:

"Exclusive Listing

In consideration of services to be rendered by Wm. E. Perry in selling property on reverse side, I agree to give him exclusive sale for the term of 3 months and to pay 5% commission for said sale.

Dated in Pawt on 3 day of September 1951 A.D.
Signed [signed] Meyer Saddlery Corp.

                              Vice Pres.
                              Clinton Zimmer"

The respondents urge the contrary view. In that connection we agree with the great weight of the decided cases which supports the position taken by respondents.

The general rule of law is stated in the following language in 12 C.J.S., Brokers, §20, pp. 60, 61, 62: "Authority of a real estate broker to complete a sale, or to enter into a contract of purchase or sale binding on his principal, exists only where the intention of the parties specifically to confer such authority affirmatively appears from the language of the contract of employment as construed in the light of the surrounding circumstances, or of the practical construction placed on the contract by the parties themselves; and, except where such authority is so given, the authority of a real estate broker ordinarily * * * when employed by the owner, is merely to find a purchaser who is ready, able, and willing to enter into a contract on the terms specified by, or acceptable to, the principal; and, in the absence of such special authorization, the broker has no authority to enter into a complete and binding contract to sell, or to sell and convey, on behalf of the owner; and this rule applies, even though the broker is employed as an exclusive agent for the sale of the property * * *." See also 4 R.C.L., Brokers, §14, p. 262. *D. N. Toohey & Co.* v. *Davis,* 85 N. H. 80; *Karupkat* v. *Zoph,* 140 Md. 242. The precise question now before us has apparently not been passed upon heretofore by this court. However, it has been held in *Donahue* v. *Reiner Co.,* 46 R. I. 302, 304: "Courts have frequently declared that the giving of an exclusive agency to sell does not preclude the owner from selling to a customer not procured through the efforts of a broker."

A consideration of the listing card in evidence here in our judgment does not affirmatively show from the language

used therein a specific intention by the corporation to confer upon Perry as broker authority to complete a sale of the property in question or to enter into a contract of purchase and sale which would bind the corporation as his principal. We find nothing in the circumstances surrounding the instant transaction or in the conduct of the parties in connection therewith which requires that the arrangement between the corporation and Perry be given the construction urged upon us by complainant. In view of all the evidence we are of the opinion that Perry did not have authority to complete a sale of the property or to make a binding purchase and sale agreement in respect thereto.

In support of his position the complainant relies on *Cullen v. Donahue,* 45 R. I. 237. It is our conclusion that such case is so different on its facts and on the question before the court that it is distinguishable from the instant case and cannot be considered a controlling authority here. There the court in substance held that the jury was not charged on an important issue which involved determining whether, at a meeting of the parties in connection with the sale of real estate, dealings between the plaintiffs and defendants' agent constituted an offer by plaintiffs to buy the property or was an offer by defendants' agent, he having authority to sell for a definite amount. However, the nature and extent of the agent's authority to bind his principal by contract were apparently not in issue.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Albert Lanthier,* for complainant.

*Higgins & McCabe, Eugene V. Higgins,* for respondent Leon Meyer, Inc.

*Crowe & Hetherington, Thomas Hetherington,* for respondent vendee.