M. N. LANDAU STORES, INC.
*vs.*
WILLIE A. DAIGLE, ET AL.

Aroostook.　Opinion, May 12, 1961.

*George B. Barnes,*
*Murray Lavene,*
*Alfred LaBonty,*
*Charles Barnes II,* for plaintiff.

*Scott Brown,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., did not sit.

WILLIAMSON, C. J. This is a bill in equity against Willie A. Daigle, the proposed lessor, and his son for specific performance of an agreement to alter and lease a store or to recover damages for breach of the agreement, and for cancellation of a mortgage given by the defendant Willie A. Daigle to his son for the alleged purpose of defrauding creditors.

The single justice entered a decree denying specific performance, awarding damages for breach of contract and ordering cancellation of the mortgage. The plaintiff appeals only on the ground that the damages awarded were inadequate. The defendants appeal on the ground there was no binding agreement to lease and hence the bill should have been dismissed. Assuming a binding agreement, the defendants do not question the amount of damages awarded or the cancellation of the mortgage to the son. In considering the cross appeals we have no further interest in the mortgage or the son's interest in the litigation. For convenience, we may refer to Willie A. Daigle, the proposed lessor, as the defendant.

First — The defendant's appeal is dismissed. The single justice decreed that "The writing entered into on October 30, 1951, constituted a final and binding agreement for a lease."

The finding stands insofar as the facts are concerned unless shown to be clearly erroneous. Compare *Harriman* v.

*Spaulding,* 156 Me. 440, 443, 165 A. (2nd) 47; Rule 52 (a), Maine Rules of Civil Procedure.

The first approach was made by the defendant to the plaintiff by a letter in September 1951 seeking to interest the plaintiff in renting the premises owned by the defendant in the business section of Madawaska. A reply was received from Mr. Louis Rabinow of the Rabinow Real Estate Co., who appears, as he stated in his reply, to "take care of the real estate" for the plaintiff.

After negotiations by correspondence and personal conferences in which the defendant and Mr. Rabinow, among others, were included, an agreement between the plaintiff and the defendant finally crystallized at Madawaska on October 30, 1951. The agreement was evidenced by a typewritten letter from plaintiff to defendant of October 16, 1951, with the attached "schedule of requirements," with certain agreed written changes.

The agreement, without the attached schedule, reads as follows:

"M. N. LANDAU STORES, Inc.
Executive Offices
33 West 34th Street: New York 1, N. Y.

October 16, 1951

Mr. Willie A. Daigle
Madawaska,
Maine

Dear Mr. Daigle:

We have been informed by Mr. Louis Rabinow that you are willing to enter into a lease with us, covering the store at 496 Main Street, Madawaska, Maine, recently occupied by the A & P Tea Company, at the following terms:

1.    You are to alter the premises by the erection of an addition to the store and basement, approxi-

mately 35 feet in depth by ~~70~~ *80* feet in width, and you are to remodel the premises in accordance with the general schedule of requirements attached.

2.    The rental shall be a minimum of ~~$6,000~~ *$7200.00* per annum, heated, plus 4% of annual sales in excess of ~~$135,000~~ *(175,000)*, but the total rental in any year shall not exceed $15,000.

3.    The term of the lease shall be for 25 years from the date we are given possession of the completed premises, and we are to have the option to renew the same for an additional 25 years, in which event the minimum rental will be increased to ~~$6,600~~ *$7,800* per annum *as long as your son conducts the drug store next door, we will not have a fountain in our store.*

If the foregoing is correct, please confirm the above and we will arrange for our architect to visit the premises, for purposes of drawing plans and specifications for the alterations.

*When the lease is signed we will deposit $7200.00 with a bank in Caribou or Madawaska with instructions that this sum is to be turned over to you when we take over the store for occupancy. You will apply this sum towards the first year's rent, and will pay us 4% interest on this amount.*

Very truly yours,

M. N. LANDAU STORES, INC.

s/   W. Landau
William Landau

WL/rd
att.

*Madawaska, Maine*
*Oct. 30, 1951*

*I agree to and accept the above terms and conditions.*

s/   Willie A. Daigle"   (Changes underscored)

In January 1952 the last draft of the form of a lease prepared by the plaintiff's attorney was sent to the defendant's attorney. The lease contained the terms of the October 30th agreement, somewhat amplified, as one would expect, together with minor changes and additions agreed upon by the parties.

The lease ran, however, not to the plaintiff corporation as lessee, but to "Landau-Madawaska Corporation." The defendant was informed by the plaintiff that this corporation was a wholly owned subsidiary of the plaintiff, organized in accordance with plaintiff's practice in opening a new store.

The single justice in his findings and opinion says on this point:

> "The evidence is to the effect that the defendant, Willie A. Daigle, was advised that plaintiff corporation would guarantee the rent and at the time this lease was presented to the defendant, Willie A. Daigle, the evidence is that this defendant made no comment."
>
> \* \* \* \* \* \* \* \* \* \* \*
>
> "While it is contended that the defendant is absolved from liability because he was presented with a lease in which a subsidiary corporation was named as lessee, it seems clear from the evidence that this was not the reason which motivated the defendant in his failure to comply with the terms of the original agreement. Undoubtedly, if the plaintiff corporation had insisted that a lease should be given to the new corporation, the defendant, Willie A. Daigle, would have been under no legal duty to execute such a lease."

It developed that the cost of alterations under specifications prepared by architects employed by the plaintiff would exceed $80,000. The defendant was unable to raise such an amount. Mr. Rabinow, or his company, tried without success to obtain needed mortgage money. Negotiations ended and the defendant in the fall of 1952 leased the store to another lessee and mortgaged the premises to his son.

There is no error in the finding that the agreement of October 30, *supra,* "constituted a final and binding agreement for a lease." The defendant contends in substance that all that took place on October 30 and subsequently was no more than negotiation looking toward an agreement. The terms of the October 30th agreement, however, were sufficiently definite and certain in the opinion of the factfinder to form a contract.

It was unquestioned that the parties intended to execute a lease. Was the lease to be the "convenient memorial" of the October 30th agreement, or was it to be the first and final agreement, or the "consummation of negotiations"? In our opinion the intention to execute a formal lease did not negative the intention that the October 30th agreement was binding.

The general rule is set forth in *Steamship Co.* v. *Swift,* 86 Me. 248, 258, 29 A. 1063, 41 A. S. 545, as follows:

> "From these expressions of courts and jurists, it is quite clear that, after all, the question is mainly one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: if the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed."

See also *Berman* v. *Rosenberg,* 115 Me. 19, 97 A. 6; Annot. 122 A. L. R. 1217, 1221, 1247; Annot. 165 A. L. R. 756.

The defendant also urges that the agreement of October 30th was made upon the condition that the contemplated changes would not cost over $35,000, and that accordingly the agreement ended when it appeared the cost would exceed the outside limit.

The single justice found for the plaintiff on the issue of fact. In brief, the defendant made an agreement to lease the store as altered under certain specifications. The fact that he could not carry out his agreement through inability to finance the required changes did not relieve him from the burden of his contract with the plaintiff. See *Grayson-Robinson Stores* v. *Iris Const. Corp.,* 202 N. Y. S. (2nd) 303 (C. A. 1960), involving specific performance.

Second — The plaintiff's appeal is dismissed. The single justice found:

> "In its claim for damages, the plaintiff corporation has introduced evidence of charges for time spent by some of its salaried officers. I find that this is not a proper element of damage. However, the plaintiff corporation is entitled to reimbursement for actual expenses made in reliance upon the contract entered into with the defendant, Willie A. Daigle. The evidence shows such disbursements, including fees paid to an architect, to be in the amount of $2,907.21.

> "Plaintiff also claims damages resulting from the loss of the lease of the premises. The only evidence which supports such a contention is based on conjecture. I find that the lease had no value over and above the rent to be paid."

The measure of damages is the difference between the rental value of the store to be altered for use of the lessee under the agreement and the rent reserved, with such special damages as may have been within the contemplation

of the parties. *Brown* v. *Linn Woolen Co.*, 114 Me. 266, 95 A. 1037; *Small* v. *Clark*, 97 Me. 304, 54 A. 758; Sedgwick, Elements of Damages, p. 310.

The measure of damages is stated in 1 American Law of Property § 3.52, p. 285, as follows:

> "Where the lessee has been evicted from the premises by the lessor and sues for damages for breach of the covenant of quiet enjoyment the general rule is that the measure of damages is the difference between the rental value of the premises for the remainder of the term and the rent reserved in the lease, with such special damages as may have been within the contemplation of the parties."

The same rule is applicable for breach of an agreement to erect a building for use of the lessee. *Huyler's* v. *Ritz-Carlton Restaurant & Hotel Co.*, 6 F. (2nd) 404 (D. C. Del.); *Neal* v. *Jefferson*, 212 Mass. 517, 99 N. E. 334, 41 L.R.A. N.S. 387 (prospective profits summer hotel allowed); *Sinclair Refining Co.* v. *Gutowski*, 195 F. (2nd) 637 (C. A. 6), on recovery of anticipated profits; 5 Williston, Contracts § 1405 (rev. ed.); 51 C. J. S., *Landlord & tenant* § 314, p. 978.

For convenience we dispose first of the claim for special damages. There is no question about the damages of $2907.21 for architect's fees and other expenses. The single justice refused to include in his award any charges for time spent on the Daigle agreement by salaried employees. We are unable, as was he, to trace any loss to the plaintiff directly to this cause. Damages on this score could have been reached only by guess, surmise, or conjecture — an unsatisfactory basis for the award of damages.

The main contention of the plaintiff is in the field of general damages, that is to say, in damages arising from the difference between the value of the lease the plaintiff was entitled to receive, and the rent reserved.

We have here the percentage lease, in which typically the lessee agrees to pay annually a stated minimum, plus a percentage of sales, not to exceed a fixed maximum. Such a lease is particularly adaptable, to summarize one commentator, to a new enterprise which will produce unknown returns and where it is difficult to fix a fair rental. 28 Temple Law Quarterly, 277 (1954-55). It is unnecessary here to discuss the advantages and disadvantages of percentage leases to landlords and tenants. For material on such leases and problems raised thereby see notes 61 Harvard Law Rev. 316 (1948) ; 44 Cornell Law Quarterly 251 (1959) ; 12 Oklahoma Law Rev. 293 (1959) ; Landis on Problems in Drafting Percentage Leases, 36 Boston U. Law Rev. 190 (1956).

Witnesses for the plaintiff, including Mr. Rabinow, testified that a normal basis for rental of a store of this type would be at least 5% of sales per annum. The agreement of October 30th carried an annual rental of $7200 plus 4% of sales above $175,000, or approximately 4% of sales, with a maximum of $15,000.

From 1956 to the time of hearing the plaintiff leased and operated a store in Madawaska. It was established, as we read the record, that the location of the store was inferior to the location of defendant's property, that the gross annual sales averaged approximately $275,000, and that the rental was at least $15,000 a year after deduction of taxes, insurance, repairs, and heating.

The plaintiff estimates its minimum annual loss for the lease period in this manner:

| (1) | $275,000 estimated sales | |
|---|---|---|
| | Rent at 5% | $13,750 |
| | Agreed rent at $7200 | |
| | plus 4% of $100,000 | 11,200 |
| | Loss | $ 2,550 |

(2)      $310,000 estimated sales

| | |
|---|---|
| Rent in fact paid | $15,000 |
| Agreed rent at $7200 plus 4% of $135,000 | 12,600 |
| Loss | $ 2,400 |

The value of a lease with the rent reserved based largely on a percentage of sales, or in other words, upon a partnership of lessor and lessee within the range of minimum and maximum rent, cannot be clearly measured against the value of a lease with a flat rental without regard to volume of business. Let us suppose gross sales reached $370,000, the rental under the lease from the third party would remain $15,000, and the rental under the October 30th agreement would also be $15,000. The greater the sales the less would be the loss to the plaintiff.

The comparison, however, between percentage rentals of 5% and 4% may readily be made. The obvious annual loss is 1% of the sales, other conditions of the lease remaining constant. The single justice was not compelled to accept the evidence of the plaintiff that 5% was the point of departure to determine the loss. The real estate expert, acting in the first instance for the plaintiff, secured this lease at 4% (or very nearly 4%) and at the same time considered he was entitled to a substantial commission on a percentage basis from the defendant. Another witness on the 5% basis was an employee of the plaintiff. There was the further question whether the experience elsewhere in New England should govern in Madawaska. On plaintiff's theory the lease under the agreement was worth 25% more than the rent reserved.

From the record we are left with the belief that the plaintiff failed to show that the proposed lease did not represent fair value to both parties for the store with proposed alterations for the term of the lease.

The entry will be

> *Decree affirmed.*
>
> *Appeals of plaintiff and defendant dismissed without costs.*