JOSEPH P. CUDDIGAN *vs.* KEN LIST *et al.*

JANUARY 19, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

PAOLINO, J. This is a bill in equity for specific performance of an alleged contract to sell a certain parcel of real estate in the city of East Providence and for incidental injunctive relief. After a hearing in the superior court on bill, answer and proof the trial justice entered a final decree granting the prayers of the bill. The cause is before us on the respondents' appeal from such decree.

The bill alleges in substance that on May 20, 1960, respondent Ken List, by his duly authorized agent, G. L. & H. J. Gross, Inc., entered into a written agreement with complainant to sell to him the premises in question for the sum of $16,600; that complainant delivered to the agent a check for $500 in part payment of the purchase price; that complainant was thereupon given possession of the premises; and that he has at all times been able, ready and willing to pay the balance of the purchase price, but respondents have refused to complete the agreement.

By their answer respondents denied that they had entered into a written agreement as alleged by complainant or that complainant had been let into possession. At the hearing in the superior court it was stipulated that respondent Ken List was the beneficial owner of the property which was held in the name of respondent Jean Drzal.

The issue raised by the pleadings is whether there was a written agreement authorized by respondents for the sale of the property in question.

A multiple listing agreement is in evidence as complainant's exhibit #3. It is signed by James C. Raleigh as the

authorized representative of Ken List and grants to G. L. & H. J. Gross, Inc. "the sole and exclusive right to sell" the property in question "at a price of $18,500 and on the terms herein stated * * *." The agreement also authorizes G. L. & H. J. Gross, Inc. "to sell the real estate at the above stated price and terms." According to its terms the agreement was to be in force from April 5, 1960 to July 5, 1960.

James C. Raleigh testified that he was an employee of the Gross firm; that it had the exclusive agency to sell the property; that on May 20, 1960, complainant offered him $16,600 for the property; that in complainant's presence he telephoned Mr. List to inquire whether he would accept $16,600; and that Mr. List said he would. He further testified that as a result of his conversation with Mr. List he drew up an instrument which is in evidence as complainant's exhibit #1, accepted a check for $500 as a deposit from complainant, and gave him a receipt for the same and a key to the house.

The receipt, complainant's exhibit #1, is dated May 20, 1960, and is signed by James C. Raleigh for "G. L. & H. J. Gross, Inc., Agents." It recites the receipt of the sum of $500 from complainant as a deposit on the purchase price and states that possession is to be delivered on or before July 6, 1960, and that the carpeting is not included. The receipt also states that taxes, rents, water and sewer rates shall be apportioned as of the date of the delivery of the deed. The last paragraph of the receipt reads as follows: "Important: This deposit accepted subject to the approval of seller—and buyer—to conditions contained in an agreement of sale to be submitted by . . . . . . . . . . . ."

Mr. Raleigh testified that his signing exhibit #1 was for the purpose of giving complainant a receipt for the $500 and that there was a doubt in his mind as to whether there was a "deal." He further testified that complainant signed an agreement of sale which is in evidence as complainant's

exhibit #4. This agreement was never signed by respondents.

The complainant testified that Mr. Raleigh agreed to sell him the property for $16,600 after his telephone conversation with Mr. List on May 20, 1960; that after the check and receipt were signed he told complainant that the property was his and he gave him a key to the house; that two nights later he signed an agreement of sale, complainant's exhibit #4; and that about ten days later he received a letter signed by Mr. Raleigh's secretary stating that Mr. List had returned the check and the agreement of sale and had informed them that he had accepted another offer. This letter is in evidence as complainant's exhibit #5.

After complainant rested, respondents made a motion to dismiss the bill. Upon the denial of such motion they moved to amend the answer for the purpose of pleading the statute of frauds. This motion was also denied. The respondents presented no testimony. After hearing arguments of counsel the trial justice entered a final decree granting complainant's prayers.

Under their reasons of appeal respondents contend in substance that the decree is against the law and the evidence and the weight thereof. However, they concede that the determination of this appeal depends upon two basic questions, namely, whether there was a written agreement to sell the property and whether the agent was authorized to enter into such agreement by respondents.

Although the decree contains no express findings, implicit therein are findings that the agent was authorized by Mr. List to enter into a binding agreement on his behalf to sell the property for the sum of $16,600 and that the receipt, complainant's exhibit #1, met the requirements of the statute of frauds which provides that no action shall be brought whereby to charge any person upon any contract for the sale of lands "Unless the promise or agreement upon which such action shall be brought, or some note or

memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized." G. L. 1956, §9-1-4.

In our opinion the evidence and the reasonable inferences which could be drawn therefrom support such findings. The trial justice could reasonably infer from Mr. Raleigh's testimony that by agreeing to accept the $16,600 offer, Mr. List authorized him to enter into an agreement to sell the property and to sign whatever was required to render such agreement valid and binding. *Sholovitz* v. *Noorigian*, 42 R. I. 282. In that case, at page 286, the court said: "Such authorization may be by parol; and the authority to make a contract for the sale of real estate confers authority to sign the written note or memorandum which renders such contract effective and binding."

In addition, the uncontradicted evidence is that Mr. Raleigh signed the multiple listing agreement, complainant's exhibit #3, as the authorized representative of respondents. While it is true that the price stated in exhibit #3 is $18,500, there is nothing in the evidence contradicting Mr. Raleigh's testimony that Mr. List agreed to accept $16,600. It is undisputable that the Gross firm had the authority to sell the property. Whether they had the authority to enter into a contract binding on respondents was a question of fact and depended upon the intention of the parties. See *Winiarski* v. *Leon Meyer, Inc.*, 82 R. I. 125, 130.

In view of Mr. Raleigh's uncontradicted testimony we are satisfied that the trial justice was justified in finding that Mr. List had authorized the Gross firm and Mr. Raleigh to enter into a contract binding respondents to sell the property to complainant for $16,600. We have read the cases cited by respondents. They are factually distinguishable from the case at bar and therefore are not applicable and do not help respondents on this issue.

We come next to the question whether complainant's exhibit #1, the receipt signed by Mr. Raleigh, was sufficient

to satisfy the requirements of the statute of frauds. In our opinion it was a sufficient memorandum. The receipt is not the agreement on which complainant brings suit. It is only a memorandum of the agreement. The agreement for the sale of land does not have to be in writing provided there is a note of memorandum of the agreement sufficient to meet the requirements of the statute. *Preble* v. *Higgins,* 43 R. I. 10, 13.

As we have already stated, complainant testified that after he gave the check to Mr. Raleigh, the latter gave him the receipt and a key to the house and told him that the property was his. On the basis of such testimony it is reasonable to assume that the trial justice found that a binding agreement had been completed at that time between the parties and he therefore gave no weight to the language in the last paragraph in exhibit #1 stating that the deposit was "accepted subject to the approval of seller—and buyer —to conditions contained in an agreement of sale to be submitted by ..............."

In view of the fact that the paragraph in question contains a blank space after the words "to be submitted by" and since exhibit #3 contains all of the conditions which are usually included in an agreement of sale, it is our opinion that the finding was justified.

On the view that we take, it becomes unnecessary to consider the respondents' exceptions to the denial of his motions to dismiss and to amend the answer.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John T. Walsh,* for complainant.

*Goodman, Semonoff, Gorin & Blease, Ralph P. Semonoff, Martin M. Temkin,* for respondents.