**CENTREDALE INVESTMENT COMPA-NY, Plaintiff, Appellee,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant, Appellant.**

**No. 75–1492.**

United States Court of Appeals, First Circuit.

Argued May 5, 1976.
Decided Aug. 10, 1976.

Robert J. Dumouchel, Providence, with whom Eugene V. Higgins, James A. Higgins, and Higgins & Slattery, Providence, were on brief, for defendant, appellant.

Richard W. MacAdams, Providence, with whom Peter Lawson Kennedy and Adler, Pollock & Sheehan Inc., Providence, were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff, Centredale Investment Company (Centredale), instituted this diversity action in the District Court for the District of Rhode Island to enforce an oral lease, which it allegedly entered into with defendant, Prudential Insurance Company (Prudential). Following a jury trial, a judgment was entered for plaintiff in the amount of $41,195. Although defendant raises several issues on appeal, the sole issue we reach is whether the district court erred in concluding, as a matter of law, that the Rhode Island Statute of Frauds did not preclude enforcement of the alleged lease. We reverse.

Centredale, which is wholly owned by its chief executive officer, one Robert Maggiacomo, purchased a one story office building in East Providence, Rhode Island in December, 1968. Prudential was the sole tenant in this building, under a lease which was to terminate on February 1, 1969. After Centredale took title to the building, Maggiacomo went to Boston and negotiated a new five year lease, which was subsequently executed. During these negotiations and thereafter, Maggiacomo's dealings with Prudential were primarily with one Thomas Toale, a Field Office Planning Representative for Prudential, who was authorized to negotiate, but not to enter into, leases for Prudential.[1]

The renewed lease was scheduled to expire on February 1, 1974. The lease contained a clause granting Prudential the option, which had to be exercised by November 1, 1973, to extend the lease for an additional year. Through inadvertence, Prudential failed to exercise this option. Sometime after November 1, 1973, Toale contacted Maggiacomo and requested that he grant Prudential a six month extension of the lease. Maggiacomo granted this request, having been assured that the extension was for the purpose of allowing time to negotiate a new lease. Toale and Maggiacomo commenced discussions immediately. Although Maggiacomo testified that they entered into an oral lease agreement sometime in February, 1974, Toale flatly denied that they agreed upon anything other than the terms of the offer which was to be submitted to his superiors for decision.

Later that month Toale repeatedly telephoned Maggiacomo to request that Centredale submit a letter embodying the terms and conditions that had been discussed. Toale testified that what he wanted was an "offer letter" which Prudential customarily used to prepare its "lease top sheet", and intra-office memorandum which Toale's superiors would rely upon in deciding whether

---

1. Toale testified that he had told Maggiacomo of the limitations on his authority. Maggiacomo denied being so informed. The jury found that Toale had apparent authority to enter into

a lease on behalf of Prudential. We need not here address the issue of sufficiency of the evidence to support this finding.

or not to enter into the proposed lease. Maggiacomo sent the letter, which was dated March 14. It stated: "[t]his is to confirm our agreement regarding the renewal lease . . . which will be effective August 1, 1974 . . ." and concluded by describing the terms and conditions which had been discussed. Toale did not answer this letter. He testified that, on the basis of the letter, he prepared a "lease top sheet" and forwarded it to his superiors who rejected the proposed lease because the rent was too high. Toale then called Maggiacomo, told him the rent was "unpalatable to the brass", and requested a meeting to discuss the rent term further. A meeting occurred on May 2, 1974, at which time Maggiacomo agreed to a $.10 per square foot reduction in the amount of the rent.

Although Maggiacomo testified that the May 2d meeting resulted in a modification of the prior lease agreement and that, in any event, all the other terms of the lease were reaffirmed, Toale's testimony was to the contrary. According to him, they agreed only on the terms of a proposed lease and that any "meeting of the minds" that occurred was only between the two of them and, thus, was only an agreement as to the terms of Centredale's offer.

Toale, thereafter, prepared a second lease top sheet which accurately reflected the May 2d oral understanding. Toale signed this document in a space entitled "Prepared by" and forwarded it to one W. H. Robart, who signed in a space labeled "Recommend". The lease top sheet was then passed onto one John Joslin, the manager of Toale's department, who signed it in a space labeled "Approve". Although the document contains four other spaces labeled "Approve", no other signatures appear on the lease top sheet. Toale explained that, after the lease top sheet reached the desk of the vice president of sales, Steven Herogero, Herogero said he thought the lease was unacceptable and he instructed Toale to see if he could find a better deal, which Toale did. Herogero naturally made no further notation on the lease top sheet. Toale also testified that Herogero's failure to sign the lease top sheet in an "Approve" space constituted a rejection of the proposed lease.

The Rhode Island Statute of Frauds, R.I. G.L. §. 9–1–4, contains the standard provision that

"no action shall be brought . . . [w]hereby to charge any person upon any contract for . . . the making of any lease . . . for a longer time than one (1) year . . . unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

It is conceded that Centredale's action to enforce the alleged five year lease falls within the Statute of Frauds and that the alleged lease is an oral one. The question before us is whether there is a sufficient note or memorandum evidencing the existence of the alleged oral lease to satisfy the requirements of the Rhode Island statute. The Rhode Island Supreme Court has clearly enunciated the elements that any such memorandum must contain.

"The note or memorandum sufficient to prevent the operation of the statute upon a contract for the sale of land need not have the formal precision usually found in a written contract or agreement. Such note or memorandum meets the requirements of the statute if it sets out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject-matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment if the sale is not for cash; and further such note or memorandum must be signed by the party to be charged in the action or by his agent lawfully authorized."

*Sholovitz v. Noorigian,* 42 R.I. 282, 285–86, 107 A. 94, 95 (1919). *See also Durepo v. May,* 73 R.I. 71, 76, 54 A.2d 15, 16 (1947); *Leach v. Crucible Center Co.,* 388 F.2d 176, 180–81 (1st Cir. 1968).

■ Here we think it plain that there is no writing "signed by [an authorized agent

of] the party to be charged" which evidences the respective intentions of Centredale and Prudential to enter into a new lease. The only writing which conceivably could satisfy this requirement is the lease top sheet which was prepared on May 3. Assuming, as we must for present purposes, that Toale and his immediate superiors had apparent authority to enter into a binding lease on behalf of Prudential, we see nothing in the lease top sheet indicating that these Prudential employees intended to bind Prudential to lease Centredale's premises.

The fact that Toale and Robart's signatures appeared in blanks labeled "Prepared by" and "Recommend" rebuts any suggestion the document manifests an intention on their part to bind Prudential. That Joslin signed in a space entitled "Approve" presents only a slightly more difficult problem. If it were plain from the face of the document that a signature in an "Approve" space evidenced an intention to agree, we might accept Centredale's argument. Here, however, there are four blank "Approve" spaces. The format of the document suggests that no final approval will occur until all these spaces have been signed. Since the extrinsic evidence and the very nature of this intra-office memorandum support this suggestion, we conclude that the lease top sheet, considered alone, does not evidence an intention to enter Prudential into a binding lease.

▪ Centredale argues, however, that its March 14 letter to Prudential, which stated "[t]his is to confirm our agreement regarding the renewal lease . . ." provides the evidence of the intention to continue the landlord-tenant relationship which we find lacking in the lease top sheet and that it, together with the lease top sheet, satisfies the statute. The obvious difficulty with this argument is that the March 14 letter was written by Maggiacomo and was not signed by an authorized representative of Prudential, the party to be charged. Al-

though there are circumstances in which unsigned documents may be relied upon to satisfy the Statute of Frauds, these are limited to instances in which a signed writing referred, in some manner, to the unsigned one. Restatement, Contracts § 208(b). *See Cunha v. Gallery,* 29 R.I. 230, 69 A. 1001 (1908); *cf. Macera v. Cohen,* 106 R.I. 465, 261 A.2d 841 (1970). Here, the lease top sheet, the "signed" writing, is conditional on its face, so it is doubtful that the Rhode Island Statute of Frauds would be satisfied even if it explicitly incorporated the March 14 letter by reference. We need not concern ourselves with that question, however. The lease top sheet, which was prepared over two months after the letter, contained no reference, direct or indirect, to the earlier correspondence.

The district court suggested a slightly different basis upon which the March 14 letter could be relied upon to satisfy the Statute of Frauds. It thought, relying on cases which it recognized did not involve the Statute of Frauds, that the unanswered letter could be used to satisfy the statute since the letter, in the district court's view, described an oral contract[2] and since it would have been unnatural or unreasonable for Toale not to respond to the letter if the oral contract did not in fact exist.

▪ We confess to being troubled by the thought that recipients of such letters, should they decide not to respond, do so at the peril of finding themselves bound by a solemn obligation within the Statute of Frauds. But we need not address the broad question whether the silence of the party to be charged could ever be sufficient evidence of the existence of an oral contract to satisfy the statute. Here, we think the circumstances were such that Toale's failure to answer the letter was not so "unnatural or unreasonable" as to possess the corroborative significance of a signed writing affirming the existence of an oral agreement. Toale testified that he sought the letter as a means of getting a concrete offer, and it is

---

2. We note that the letter is by no means inconsistent with Toale's assertion that the agreement he and Maggiacomo had pertained not to

a lease, but rather to the terms of a proposed lease.

undisputed that Toale used the letter to prepare a lease proposal, which his superiors rejected. Under the circumstances, Toale's silence was far too ambiguous to satisfy the evidentiary requirements of the Statute of Frauds.

The district court, however, did not rest its holding on the sole ground that the unanswered letter, together with the lease top sheet, satisfied all the requirements of Rhode Island's statute. It indicated, in the course of several thoughtful colloquies between the court and counsel, that it believed that Toale's testimony—admitting both that there was an oral agreement as to the terms of the lease he would propose and that the two written documents accurately reflected its terms—satisfied the statute. In the district court's view, these in-court admissions by Toale were the evidentiary equivalent of a writing signed by a representative of the party to be charged. It believed that the principal issue in the case was whether Toale had communicated to Maggiacomo the limited and conditional nature of his oral understanding with Maggiacomo. This, in the court's view, was simply a question of fact, which the jury could resolve by disbelieving Toale's testimony that the agreement was subject to approval and believing Maggiacomo's that the agreement was final and unconditional, as between Centredale and Prudential.[3]

■ Although we understand why the district court considered the admitted facts in ruling on the applicability of the Statute of Frauds, *see* 2 Corbin on Contracts § 498

pp. 680–82,[4] *cf. Cuddigan v. List,* 93 R.I. 505, 177 A.2d 195 (1962), we think it committed error in concluding that the Statute of Frauds was satisfied and in permitting the enforcement of the alleged lease on the basis of the jury's determination that Toale's assertions were unconditional. Toale's in-court admissions do not supply the element that we found missing in the lease top sheet: a manifestation of an intention to bind Prudential to a renewal lease. Toale did not admit engaging in conduct evidencing an intention to enter into a contractual obligation on behalf of Prudential. His admission that he and Maggiacomo had an oral understanding was qualified by his repeated assertions that he conveyed to Maggiacomo that any understanding they had was conditional. There having been no in-court admission by Toale that he unconditionally affirmed the existence of an oral lease agreement, we think the Rhode Island Statute of Frauds precluded the enforcement of the alleged lease.

Although it is implicit in the foregoing discussion, we emphasize that the result we reach is mandated by the policies embodied in Rhode Island's Statute of Frauds. That statute reflects the policy judgment that contracts falling within its terms should not be enforced unless a signed writing or possibly some other undisputed evidence persuades the court that there is no serious possibility that its enforcement would consummate a fraud. *See* Corbin on Contracts § 498. Where a principal has authorized an agent only to negotiate with a third party,

---

3. The district court apparently took the position that whether Toale's expression of agreement was conditional was relevant to the issue of his apparent authority to bind Prudential and that since this fact need not be proved by a writing signed by the party to be charged, *see Leach v. Crucible Center Co., supra,* 388 F.2d at 179, it could go to the jury. Although we assume this is correct, the crucial factor is that whether Toale's affirmation was conditional is determinative of whether there has been a manifestation of agreement. Under Rhode Island law, therefore, the unconditional character of Toale's oral understanding must be evidenced by a signed writing or its evidentiary equivalent.

4. The district court expressly relied upon Professor Corbin's teaching:

"[The purpose of the Statute of Frauds] is the prevention of successful fraud by inducing the enforcing of contracts that were never in fact made. It is not to prevent the performance or enforcement of oral contracts that have in fact been made . . . Therefore, we should always be satisfied with 'some note or memorandum' that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement." 2 Corbin on Contracts § 498 pp. 680–81.

where that agent testifies he concluded the negotiations but did not purport to bind the principal, and where the only writing signed by the agent clearly indicates the need for approval by his superiors, it contravenes Rhode Island's statute to permit a jury, on the basis of the charging party's assertion that the agent purported to bind the principal, to find that a contract had been formed. Were this not so, proof of a contract within the Statutes of Frauds would, like proof of any other contract, depend on which witness a jury found credible.

*Reversed. No costs.*