[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before the court on motion for summary judgment of the Tripp siblings (hereinafter the "Defendants") who contend that Little Compton Properties (hereinafter the "Plaintiffs") has no lawful claim that would allow them to enforce alleged agreements made between the parties. Asserting that no genuine issue of fact exists, the Defendants pray for summary judgment against the Plaintiffs. For the reasons set forth below, the court finds for the Defendants.
In considering whether to grant a motion for summary judgment, the court must review the pleadings, affidavits, memoranda, and other appropriate evidence and all reasonable inferences that may be drawn therefrom in a light most favorable to the non-moving party, Plaintiffs in this matter. Rustigian v.Celona, 478 A.2d 187, 189 (1984). The court must decide whether or not a genuine issue of material fact exists. Id. If the party opposing the motion establishes either by affidavit or by other means that a material issue of fact exists then the court must deny the motion. Grissom v. Pawtucket Trust Company,559 A.2d 1065 (R.I. 1989).
The facts surrounding this matter are uncontroverted. On January 28, 1985, the Defendants listed two properties with the real estate brokerage firm of Miriam Scott, Ltd. Miriam Scott and the Defendants signed two exclusive right to sell agreements. All of the Defendants signed the agreement pertaining to Plat 14, Lot 34 on the Tax Assessor's Map for the Town of Little Compton. The two Defendants with an ownership interest in Lot 35 signed that agreement. The agreements stipulated that these two properties, the "Honeysuckle Cottage" (Lot 34) and its accompanying beach property (Lot 35) were to be sold conditionally and simultaneously to the same buyer for between $250,000. and $300,000 total. On July 1, 1985, Scott procured the Plaintiffs as a buyer for the two properties. Scott drew up a single Offer to Purchase which was signed by the Plaintiffs only, in which the Plaintiffs offered to purchase the two lots for $250,000. After Scott accepted, endorsed and escrowed binder and deposit checks from the Plaintiffs, she drew up two Purchase and Sale Agreements (P S's), one for each lot. In accordance with the Defendants' desire that the properties only be sold together, each PS contained a provision making the sale of one property unequivocally conditional on the sale of the other. None of the Defendants signed the PS for the cottage lot; however, the two Defendants who had sole ownership of the beach lot did execute and return that PS.
The Plaintiffs seek specific performance of the two alleged agreements for the sale of the lots. The Defendants now move for summary judgment, asserting, (1) that the statute of frauds bars the Plaintiffs' request for specific performance of the alleged agreement to sell the cottage, and (2) the simultaneous sale provision bars the Plaintiffs' request for specific performance of the alleged agreement to sell the beach property.
(1) The Statute of Frauds Bars Performance of the Alleged Contract to Convey the Cottage.
Plaintiffs' claim for specific performance runs head first into the statute of frauds. The statute of frauds provides in pertinent part:
 No action shall be brought . . . to charge any person upon any contract for the sale of lands, tenements or hereditaments . . . unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized.
R.I. Gen. Laws § 9-1-4 (1985).
The Supreme Court of Rhode Island has held that in order to satisfy the statute of frauds the note or memorandum of the sale must set forth (a) the identity of the buyer and seller; (b) the buyer's and seller's respective intentions to buy and sell; (c) "a description of the subject-matter of the sale as may be applied to a particular piece of land"; (d) the purchase price; and (e) the terms of the payment if not for cash. Sholovitz v.Noorigian, 42 R.I. 282, 107 A. 94, 95 (1919); see alsoMacKnight v. Pansey, 122 R.I. 774, 412 A.2d 236, 241 (1980). A note or memorandum sufficient to satisfy the statute of frauds may consist of several writings so long as the signed writingrefers to the unsigned ones or is physically annexed thereto.Leach v. Crucible Center Co., 388 F.2d 176, 180 (1st Cir. 1968) (emphasis added) (citing Restatement (Second) Contracts § 208 (1932) and Cunha v. Gallery, 29 R.I. 230, 69 A. 1001 (1908)).
In the instant case, the evidence pertaining to any writing or series of writings cannot be viewed in "any light" that would meet the requirements of the statute of frauds. The Plaintiffs allege that the Defendants' signatures on the Exclusive Right to Sell Agreement, coupled with their intent to sell the property, suffice to meet the statute of frauds. This argument is simply without merit. No document was signed by any Defendant that evidences an intent to be bound to sell the cottage lot to the Plaintiffs. The only document signed by the parties to be charged (the Defendants) is the Exclusive Right to Sell Agreement. The Supreme Court of Rhode Island, however, declared that such agreements cannot satisfy the statute of frauds. See MacKnightv. Pansey, 412 A.2d at 241. Similarly, the Offer to Purchase clearly does not satisfy the statute of frauds, since it lacks the Defendants' signatures, evidence of Defendants' intent to sell, and the identity of the Defendants. Moreover, Plaintiffs' mere assertion that one of the Defendants stated in his deposition that all the Defendants agreed to sell to the Plaintiffs would not overcome the lack of a writing to that effect.
Thus, upon full consideration of all relevant evidence in the light most favorable to the Plaintiffs, this court finds that there is no basis for concluding that a document was signed by the Defendants that would fulfill the requirements of the statute of frauds.
The Plaintiffs next argue that Miriam Scott, as an agent for the Defendants, entered into a binding agreement with the Plaintiffs by endorsing deposit and binder checks. According to the Plaintiffs, the checks endorsed by Scott, in combination with the Exclusive Listing Agreement, sufficed to bind the Defendants. Again, this court finds the Plaintiffs' reasoning unconvincing. The Supreme Court has rejected the argument that an exclusive listing agreement gives a broker authority to enter into a contract for the sale of the seller's property. See MacKnight v.Pansey, 412 A.2d at 239.
The court also finds this case so factually distinct fromCuddigan v. List, 93 R.I. 505, 177 A.2d 195 (1962) that the result in Cuddigan bears no significance on the case at bar.Cuddigan involved a sole owner who negotiated simultaneously with an agent and a buyer. Id. at 507, 177 A.2d at 196-97. This cannot be analogous to Miriam Scott's communication with one of five owners involved in this transaction. The Exclusive Agreement, the only document signed by the Defendants, could not possibly refer to any of the other documents because it pre-dated them. The checks signed by Miriam Scott do not refer to any other documents and are not attached to any other documents.
Accordingly, the Plaintiffs cannot satisfy the statute of frauds and there exists no material issue of fact as to this matter. In sum, there is no evidence that the Defendants signed any document authorizing Miriam Scott to bind the Defendants to a sale of the properties. Without such a document, Miriam Scott would be unable to enter into a contract to bind the Defendants. In Bourne v. Campbell, 21 R.I. 490, 44 A. 806 (1899) the Rhode Island Supreme Court concluded that written authorization is necessary in order for an agent to sign a binding document for the principal (in Bourne this was a lease). The court stated that the public policy embodied within the statute of frauds, that title to land should not be exposed to the uncertainty and mischiefs created by mere verbal statements, necessitated a writing specifically delegating this authority. As no document was produced which purported to show that Miriam Scott was given this authority, this court concludes that the statute of frauds bars the sale of Honeysuckle Cottage to the Plaintiffs. Moreover, assuming arguendo that something other than written authority is sufficient for an agent to bind the principal with respect to a PS, no parole evidence exists to suggest that Miriam Scott was given any lawful authority to consummate a PS. For that matter it is uncontroverted that a PS was never executed by principal or agent with respect to the Cottage property.
(2) The Plaintiff is not Entitled to Specific Performance of theContract to Sell the Beach Because the Purchase and SaleAgreement for the Beach Conditioned Sale of the Beach on the Saleof the Honeysuckle Cottage.
The Plaintiffs finally argue that they are at least entitled to specific performance of the contract to sell the beach property because the beach PS was signed by its two owners. Here, the court must again disagree with the Plaintiff. The court notes that this contract was conditioned on the simultaneous sale of the cottage property to the purchaser. It is not clear why or under what circumstances the PS for the beach property was signed, but it is unmistakably clear that the Defendants sought to sell the parcels together or not at all. The Plaintiffs seek to thwart the Defendants' intent in that regard by asserting that the conditional sales provision was placed in the PS for the exclusive protection of the Defendants. Such a naked conclusory assertion, in light of the fact that the Defendants unilaterally included such a provision in the listing agreement and then subsequently in the PS prepared by their broker — when left otherwise unchallenged by the Plaintiffs through any countervailing evidence other than the assertion above referenced — would not permit a fact finder to infer that such provision was not at least in part for the Defendants' protection. A genuine issue of material fact in that regard simply does not exist. The Defendants' decision not to sell the cottage prevented the condition upon which the sale of the beach could take place. Specific performance is not available when, as in this case, a condition precedent to the obligation to perform in accordance with the contract has not come about. Sarni v. Armada,118 R.I. 348, 373 A.2d 822, 826 (1977); cf. Moulson v. Iannucilli,84 R.I. 85, 90, 121 A.2d 662, 664 (1956) Therefore, the Plaintiffs are not entitled to specific performance of the agreement to sell the beach property.
In conclusion, this court finds as a matter of law that the statute of frauds does in fact bar the sale of the Honeysuckle Cottage. Accordingly, the sale of the beach property is barred pursuant to the clear and unequivocal language of the PS relating to the same. Thus, the Defendants' motion for summary judgment is hereby granted. Counsel shall prepare an order.