## HYMAN G. SHOLOVITZ *vs.* HENRY A. NOORIGIAN.

### JULY 2, 1919.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

*(1)   Memorandum of Sale.   Statute of Frauds.*

The statute of frauds (Gen. Laws, 1909, cap. 283, § 6,) does not require that the agent signing the memorandum, shall be acting under written authority but such authorization may be by parol and the authority to make a contract for the sale of real estate confers authority to sign the memorandum.

*(2)   Memorandum of Sale.   Statute of Frauds.*

In an action to recover damages for breach by defendant of a contract to convey real estate the memorandum for sale was as follows:—"Aug. 17 1916 Received of X., $25 to bind the bargain for the sale of Harry Noorigian Brick store and land at 46 Blackstone St. to X.   Said deposit to be forfeited to Harry Noorigian in the failure of X to purchase said property on August 25 1916.   Ballance due $1975

J F GREENE agt. for H NOORIGIAN."

*Held,* that a memorandum was sufficient if from a consideration of the whole contract it could be gathered that it was the intention of one party to convey and of the other to purchase, regardless of apt words expressing the agreement of the parties to sell and to buy.

*(3)   Memorandum of Sale.   Parol Evidence.   Description.*

If the description of the subject-matter of the agreement between the parties is so uncertain and indefinite that it cannot be applied exclusively to any specific land, parol evidence cannot be received to complete the description but if the description is definite though requiring extrinsic evidence to identify the land which it represents, parol evidence may be received for that purpose.

*(4)   Memorandum of Sale.*

Where a memorandum was made in Woonsocket and both parties resided there and defendant owned property on Blackstone Street in that city, the description "46 Blackstone St" will be presumed to refer to that number on that street in that city.

*(5)   Memorandum of Sale.*

The description in a memorandum, "brick store and land at 46 Blackstone St" is not indefinite, because there are two doors to the store numbered 44 and 46.

*(6)   Memorandum of Sale.*

The description in a memorandum, "brick store and land at 46 Blackstone St" is not insufficient because the width and depth of the lot on which the store stands is not set out, since such description must define at least the land on which the store stands.

*(7) Memorandum of Sale. Evidence.*

In an action to recover damages for breach by defendant of a contract to convey real estate, certified copy of deed by which defendant acquired the whole parcel of land of which the lot in question was a part, was properly admissible on the part of the plaintiff to identify the property described in the memorandum.

ASSUMPSIT.  Heard on exceptions of plaintiff and sustained.

SWEETLAND, J.  This is an action in assumpsit to recover damages for the alleged breach by the defendant of a contract to convey to the plaintiff certain real estate in the city of Woonsocket.

The case was tried before a justice of the Superior Court sitting with a jury.  At the close of the plaintiff's evidence on motion of the defendant said justice granted a nonsuit. The case is before us upon the plaintiff's exceptions to the ruling of said justice on the motion for nonsuit, and to a ruling of said justice refusing to admit in evidence the certified copy of a certain deed.

The material facts which appear in the transcript of evidence may be summarized as follows :  The defendant on August 17, 1916, was the owner of certain real estate situated on the southerly side of Blackstone street in Woonsocket and extending southerly to Burts Lane.  Burts Lane is not parallel with Blackstone street, and the east line of the defendant's land is considerably shorter than its west line. The level of Burts Lane in the rear of said land is higher than the level of Blackstone street and said lane is supported by a retaining wall along the south line of the defendant's land.  At the easterly end of the defendant's land is situated a one story brick building containing one room used as a store.  In the front of said brick building on Blackstone street are two doors side by side, one of which is numbered 44 and the other 46 on Blackstone street.  At some time previous to August 17, 1916, there had been a partition in said room running from between said doors to the southerly interior wall of said room, and each portion of the

room so partitioned had been used as a separate store; but before August 17, 1916, said partition had been removed and thereafter the room had been used as a single store having the two doors as a double door. This was the condition of the premises on said date. To the north said brick building or store was situated on the line of Blackstone street, to the east it extended to within about a foot of the easterly line of the defendant's land, to the west it abutted upon a wooden building of the defendant, and to the south, at its south-easterly corner it was built into the retaining wall of Burts Lane and at the southwesterly corner it extended to within a few feet of the retaining wall of Burts Lane. It thus appears that said brick building occupied all of the defendant's land to the east of his frame or wooden building except a strip a few inches wide along the easterly line of the defendant's land and a small triangular piece along Burts Lane. Previous to August 16, 1916, the defendant placed all of his real estate on Blackstone street in the hands of James F. Greene, a real estate broker of Woonsocket, with authority to sell the same at the price of $8,000. On August 16, 1916, the defendant authorized Mr. Greene to sell the brick store, so-called, separate from the rest of said real estate, for $2,000. In the forenoon of August 17, 1916, Mr. Greene, acting upon the authority thus given him by the defendant, completed an agreement with the plaintiff whereby the defendant sold and the plaintiff purchased said brick store for $2,000. The plaintiff paid Mr. Greene $25 as earnest money, and Mr. Greene gave to the plaintiff the following writing : "August 17, 1916. Received of H. G. Sholovitz Twenty five 00/100 Dollars To bind the bargain for the sale of Harry Noorigian Brick store and land at 46 Blackstone Street to H. G. Sholovitz. Said deposit to be forfeited to Harry Noorigian in the failure of H. G. Sholovitz to purchase said property on August 25th 1916. Balance due nineteen hundred and seventy five dollars. J. F. Greene Agt for H. Noorigian." Mr. Greene then, on the same forenoon, brought the defendant to the plaintiff,

showed and read said memorandum to the defendant, showed to the defendant the earnest money which he had received, and said to the defendant, "If he does not pay the balance on the twenty fifth of August this twenty five is yours." The defendant then said that he would have the deed ready and would pass title at two o'clock in the afternoon of the same day. Later he refused to make the conveyance. On August 25, 1916, the plaintiff offered the defendant the balance of the purchase price and requested him to make a conveyance of the property, but the defendant refused, and the plaintiff has brought this action to recover damages for the defendant's breach of said agreement.

The justice presiding nonsuited the plaintiff on the ground that the written paper given by Mr. Greene to the plaintiff did not constitute an agreement on the part of defendant to convey and, if said writing should be considered as an agreement to convey, the description of the property was too indefinite to be enforced.

The Rhode Island Statute of Frauds (Sec. 6, Chap. 283, Gen. Laws, 1909) in part provides as follows : "Sec. 6. No action shall be brought:—*First.* Whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer time than one year;" . . . "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized." The note or memorandum sufficient to prevent the operation of the statute upon a contract for the sale of land need not have the formal precision usually found in a written contract or agreement. Such note or memorandum meets the requirements of the statute if it sets out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment if the sale is

not for cash; and further such note or memorandum must be signed by the party to be charged in the action or by his agent lawfully authorized.

Whatever may be held as to the sufficiency of the writing now under consideration in other respects, the evidence tends to establish that it is one signed by the lawfully authorized agent of the defendant. By the provision of the statute of frauds in a few jurisdictions it is required that an agent signing such promise, agreement, or note or memorandum thereof, shall be one acting under written authority. There is no such requirement under our statute. In the absence of a statutory provision to the contrary the ordinary rules of the law of agency prevail. Such authorization may be by parol; and the authority to make a contract for the sale of real estate confers authority to sign the written note or memorandum which renders such contract effective and binding. According to the evidence the broker, Mr. Greene, had been authorized by the defendant to sell the real estate which was the subject of the oral negotiation between Mr. Greene and the plaintiff for the sum of two thousand dollars. Immediately after preparing the writing in question the broker showed and read it to the defendant and explained to him its effect. A finding would be warranted that the broker had full authority to sell the property in question and to sign on behalf of the defendant the writing before us; also upon the evidence, from the conduct of the defendant, a finding would be warranted, that the defendant ratified the act of the broker in making the contract, receiving the earnest money, and delivering said writing to the plaintiff.

In granting the motion for nonsuit said justice gave as a reason that the writing failed to express an agreement on the part of the defendant to convey the land to the plaintiff. *Thornton* v. *Kelly*, 11 R. I. 498, was an action brought to recover damages of the defendant for refusing to take and pay for a house and lot which the plaintiff alleged he agreed to purchase of him. The written memorandum of agree-

ment was as follows : "I hereby agree to sell to John Kelly the house and lot situate on Lockwood Street, second lot east of Clay Street, on north side of Lockwood, for the sum of ($7,000) seven thousand dollars, and agree to give a satisfactory deed on or before the first day of September next, and hereby acknowledge the receipt of ten dollars on account of above sale." This agreement was signed by the plaintiff Thornton and by the defendant Kelly. It will be observed that in this memorandum while the plaintiff Thornton agrees to sell and convey, the defendant Kelly does not agree to purchase, yet the court held that the memorandum was sufficient to charge the defendant and said, "The word 'sale' necessarily imports concurrence or agreement. It shows, then, that the contract between these parties was complete, and that it only remained to carry it into effect." The court further said, "But the statute does not require a complete contract. It requires only that the promise or agreement, 'or some note or memorandum thereof,' shall be in writing. We do not think there can be a doubt that the memorandum here would have been sufficient to charge the plaintiff in favor of the defendant, if the plaintiff had refused to fulfill the contract on his part. Why, then, is it not sufficient to charge the defendant in favor of the plaintiff ? The answer given is, that it does not show any promise in writing by the defendant. But it shows that there was a valid agreement between the plaintiff and the defendant, and what the agreement was; and such a memorandum, signed by the party to be charged, is all that the statute requires." The reported cases disclose that courts have frequently had under consideration writings relating to the sale of real estate in which a receipt for a portion of the purchase price has been coupled with some reference to the terms of the contract. In many cases such writings have been held to constitute a sufficient compliance with the provisions of the statute where the agreement of the vendor to make a conveyance was much less explicit than in the writing before us. In *Tobin* v. *Larkin*, 183 Mass. 389, the

written memorandum was as follows: "Lawrence, Mass. May 12, 1902. Received of Patrick Tobin $25 as part payment of house and land number 10 Howard street belonging to Bridget Larkin. The price to be paid is seventeen hundred dollars ($1700). Lot is 100 by 210 feet. Herman Otto, Agent." The writing in *Tobin* v. *Larkin* is typical of many considered and approved by the courts. *Ullsperger* v. *Meyer*, 217 Ill. 262; *Hurley* v. *Brown*, 98 Mass. 545; *Eppich* v. *Clifford*, 6 Colo. 493. In *Van Doren* v. *Roepke*, 107 Wis. 535, the court had under consideration memorandum which contained no explicit words expressing the agreement on the part of the respondent to convey or of the complainant to purchase. The court said: "Neither (2) is it necessary that the memorandum should contain apt and definite words expressing the agreement to convey. It is sufficient if from a consideration of the whole contract it can be gathered that it is the intention of one party to convey and of the other to purchase." In reaching his conclusion that the memorandum in this case does not express an agreement to convey, said justice has not given to the terms of the memorandum their true legal effect. The writing plainly recites that the defendant's agent has received from the plaintiff twenty-five dollars for the purpose of binding the bargain for the sale of the defendant's property to the plaintiff. The expression "bargain for the sale, &c.," used in the memorandum, in accordance with both its ordinary and legal interpretation imports an agreement on the part of the plaintiff and the defendant, respectively, the one to convey and the other to accept the conveyance and pay the purchase price. In *Koenig* v. *Dohm*, 209 Ill. 468, the court, following the definition of Webster, held, that a bargain is "an agreement between parties concerning the sale of property; or a contract by which one party binds himself to transfer the right to some property for a consideration, and the other party binds himself to receive the property and pay the consideration."

Said justice of the Superior Court in nonsuiting the plaintiff also held that the memorandum was defective in that the description of the property was too indefinite to be enforced; and the justice called attention to the fact that while the memorandum described the brick store and land as at 46 Blackstone street the evidence disclosed that one of the doors in said store was numbered 44 on Blackstone street and also to the fact that the memorandum failed to specify the width and depth of the lot on which the brick store was situated. In *Ray* v. *Card,* 21 R. I. 362, the court held that a note of an agreement for the sale of land was insufficient to answer the requirements of the statute of frauds when said note contained no description of the land other than a reference to it as "that lot," and that resort could not be had to parol evidence to supply the description. In *Lee* v. *Stone,* 21 R. I. 123, the court held that the "identity of the land may be shown by parol." The holding of the court in these two cases represents the generally accepted doctrine. If the description of the subject matter of the agreement between the parties is so uncertain and indefinite that it cannot be applied exclusively to any specific land (3) parol evidence cannot be received to complete the description; if the description is definite though requiring extrinsic evidence to identify the land which it represents parol evidence may be received for that purpose. In *Hurley* v. *Brown,* 98 Mass. 545, the description contained in the memorandum under consideration was simply "a house and lot of land situated on Amity street, Lynn, Mass." As to this description the court said : "We regard the fair construction of the words used to be, that they relate to a house and lot owned, at the time the memorandum was signed, by the parties who subscribed it. Thus interpreted, they are sufficiently certain, and the oral evidence is needed only to apply the description. This must be done by extrinsic evidence in every contract or conveyance, however minutely the boundaries of the estate may be set forth. The maxim, *id certum est quod certum reddi potest,* is the established rule

of construction in suits for specific performance. The contract in the present case seems to us fairly within its application." The doctrine enunciated in *Hurley* v. *Brown,* has been followed by the Massachusetts court in subsequent cases. The description in the memorandum before us is "Harry Noorigian brick store and land at 46 Blackstone street." It appears in evidence that the defendant Henry A. Noorigian was known as "Harry Noorigian" and there is no question raised but that by that name in the memorandum reference is made to the defendant. According to a commonly recognized presumption, since the memorandum was made in Woonsocket and both parties reside in Woonsocket and the defendant owns property on Blackstone street in Woonsocket, "46 Blackstone street" in the memorandum refers to number 46 Blackstone street in the city of Woonsocket. As thus interpreted the description is of the defendant's brick store and land at 46 Blackstone street in Woonsocket. This on its face is a definite description of a particular brick store and at least the land on which it stands.

(5) A description is required in a memorandum evidencing a sale of land in order that the property which is the subject of the contract may be identified. We cannot agree with the criticism of the said justice that because there were two doors to the brick store of the defendant, one numbered 44 and the other 46, that said store is not identified when referred to as "at 46 Blackstone street." The fact that the other door is numbered 44 creates no uncertainty as to the identity of the store or building described in the memorandum.

(6) Neither in our opinion should the memorandum be held insufficient to charge the defendant because the width and depth of the lot, on which the store stands, is not set out therein. We have already said above that the description without question must be held to define at least the land on which the brick store stands and surely to that extent the defendant was bound to make conveyance. By reference to the evidence presented in the case at bar it appears that

the defendant's brick store at 46 Blackstone street was situated at the easterly end of the defendant's property and that the land on which it stands and the small amount of land adjoining it was well defined and set off from the remainder of the defendant's land by monuments, consisting of Blackstone street and Burts Lane to the north and south respectively, the land of one Cunningham on the east and the wooden building of the defendant on the west. In *Scanlan* v. *Geddes*, 112 Mass. 15, the court was considering the sufficiency of a written memorandum of an agreement to sell real property. The description in the memorandum was "house on Fifth Street, between D and E Streets." The court said, p. 17, "It is equally clear also that the house was to be conveyed, not as mere personal property with an easement in land, but by a warranty deed, and as real estate. *Esty* v. *Currier*, 98 Mass. 500, and cases there cited. The proper construction of the agreement is that the house was to be conveyed, with the land upon which it stood, and so much more as was necessary to its beneficial enjoyment, and within the power of the defendant to convey."

We are of the opinion that the description in question is in itself a sufficient description; that by the aid of parol evidence the finding would be warranted that the property described may be identified as all that portion of the defendant's property on Blackstone street which is east of the defendant's wooden building, and which is delineated on the plat in evidence marked Plaintiff's Exhibit 2 as the lot which at the trial was marked by a cross drawn with a pencil, which cross still remains upon said plat. The granting of the motion for nonsuit was error.

The plaintiff's exception to the refusal of said justice to (7) admit in evidence a certified copy of the deed from William Meyers to the defendant should be sustained. This was the deed by which the defendant acquired the whole parcel of land on Blackstone street of which the brick store was a part, and in its description it sets out the boundaries of said

parcel. As part of the evidence properly admissible to identify the property described in the memorandum the plaintiff should have been permitted to show the ownership of the defendant, his relation to the property, the extent of his holding and the boundaries of the whole tract if thereby aid would be furnished in fixing the location and the boundaries of the portion described in the memorandum. It clearly appears that said deed would have furnished evidence to that end and it should have been admitted. *Baker* v. *Hall*, 158 Mass. 361, was a cause for the specific performance of a contract to convey twenty-nine hundred and twenty-five square feet of a much larger tract of land belonging to the defendant. This contract was evidenced by a memorandum of agreement in writing signed by the parties. The position upon the larger tract of the land to be conveyed could be identified only by reference to a sketch accompanying the memorandum and the sketch was interpreted by resort to the aid of a plat and a number of deeds which were admitted in evidence. The court said: "For the purpose of interpreting the document, we may put ourselves 'in the position of the parties, and ascertain by oral evidence their relations to any property which would satisfy the terms of the memorandum'; *Farwell* v. *Mather*, 10 Allen, 322, 324; and we are also to presume that the words used to describe the land relate to land owned at the time by the vendor. *Hurley* v. *Brown*, 98 Mass. 545. The same presumption is, of course, to be applied in interpreting the sketch which is part of the memorandum."

The plaintiff's exceptions are sustained. The case is remitted to the Superior Court for a new trial.

*James H. Rickard, Jr.,* for plaintiff.

*Greene & Rousseau,* for defendant.