GREENSLEEVES, INC.

v.

Philip B. SMILEY, Sr.

Eugene W. FRIEDRICH,
Trustee (Intervenor)

v.

Elizabeth MEYER.

No. 95–478–Appeal.

Supreme Court of Rhode Island.

June 6, 1997.

Joseph R. Palumbo, Jr., Middletown, for
Plaintiff.

Maryjo Carr, Newport, Francis A. Gaschen, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

PER CURIAM.

This matter came before the Court for oral argument on December 2, 1996, pursuant to an order directing the plaintiff to appear and show cause why the issues raised in his appeal from a Superior Court final judgment granting both the defendants' motion to strike lis pendens and the intervenor's motion to dismiss should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

From 1988, Philip B. Smiley, Sr. (Smiley), owned six condominium dock slips in Newport, Rhode Island. In 1990 Smiley decided to sell the slips. He engaged the services of Joseph W. Accetta (Accetta), a licensed real estate broker. Accetta conducted two auctions in 1990 and 1993 at which times the slips were offered for sale, but neither auction produced satisfactory bids. Shortly after the 1993 auction, Smiley again contacted Accetta and asked him to continue in his efforts to obtain a buyer for the condominium dock slips. Smiley suggested that Accetta recontact Elizabeth Meyer (Meyer), who had advanced a bid for the dock slips at the 1993 auction. Accetta contacted Meyer, who was also the sole shareholder and chief executive officer of Greensleeves, Inc.,[1] and began negotiations regarding the possible sale of the dock slips. Those negotiations were successful and the terms of the purchase and sale were generally agreed upon.

In a letter dated May 24, 1995, and addressed to Meyer's attorney, Evan Leviss (Leviss), Accetta, as the agent of Smiley, summarized the purchase and sale terms to which Meyer and Smiley had agreed. The agreed upon price was $165,000. The seller was identified as Smiley, and the buyer was identified as Meyer or her nominee. The condominium association fees were to be listed as paid in full for the season, and the real estate taxes were to be listed as current. According to the letter, unit No. 24 was rented for the season at $4,400, unit No. 25 was rented for the season for $6,000, and unit No. 32 was rented for the season for $4,100. The Accetta letter stated that the rents, condominium fees, and taxes would be prorated at the closing. In the concluding portion of the letter, Leviss was requested to draw up the formal agreement and to embody therein the terms contained in the letter. Accetta, as agent for Smiley, also requested that one agreement for $140,000 be drawn up for units No. 24, 25, 39, 40, and 41 and that a separate agreement for $25,000 be drawn up for unit No. 32. Accetta's letter concluded with the statement that the "seller is responsible for my commission." Whether there would be one or two agreements had not been finally agreed upon at the time Accetta wrote the letter.

After receiving Accetta's letter, Leviss and Smiley met at Leviss's office to discuss the agreement. Smiley requested that the Accetta letter be used as the purchase and sale agreement instead of drawing up a separate document as required in the May 24 letter. Leviss called Meyer in Smiley's presence in order to ask Meyer if the use of the May 24 letter as the purchase and sale agreement was agreeable to her. She said that it was. The closing on the dock units was then set for June 14, 1995.

A day or two following the meeting between Smiley and Leviss, Eugene W. Friedrich (Friedrich) offered Smiley $175,000 for the same six slips that were the subject of Accetta's May 24 letter. That offer was $10,000 more than the amount listed in the May 24 letter from Accetta to Leviss. Smiley informed Accetta that he planned on taking the higher offer. Therefore, Smiley had Friedrich fax his offer to Accetta that same day. A closing was held on June 15, 1995.

---

1. Throughout this opinion, when we refer to Meyer, we are in effect also referring to Green- sleeves, Inc., since for the purposes of this litigation, the two entities are interchangeable.

On June 14, 1995, the original date for the closing with Meyer, Meyer was informed that Smiley had entered into a sales agreement with Friedrich.

The following day, on June 15, 1995, Meyer filed a civil action against Smiley in the Newport County Superior Court and a notice of lis pendens in the land evidence records for the city of Newport. Smiley moved to strike the lis pendens from the Newport land records, and Friedrich, who later intervened in the action, moved to dismiss the plaintiff Meyer's complaint. Friedrich's motion to dismiss apparently was treated as a motion for summary judgment. Super.R.Civ.P. 56(b). The basis for the Smiley and Friedrich motions was that there was no written purchase and sale contract that had been entered into between Meyer and Smiley. Meyer asserted, however, that Accetta's May 24 letter constituted the contract and because it contained all the essential terms of the purchase and sale it constituted the binding contract of the parties. The trial justice found that the May 24 letter did not satisfy the statute of frauds, G.L.1956 § 9–1–4, and that therefore, there was no enforceable contract between Smiley and Meyer. He, accordingly, on August 11, 1995, granted the defendant Smiley's motion to strike the lis pendens, ordering it to be discharged from the land records, and the intervenor Friedrich's motion to dismiss that was apparently treated by the trial justice as a motion for summary judgment. We conclude that the trial justice erred. The May 24 letter from Accetta signed by him as the authorized agent of Smiley was sufficient to take the matter out of the statute of frauds.

 That letter from Accetta to Leviss contained all the essential elements necessary to constitute a contract. It identified the buyer and the seller. It contained the price. It recited the rental terms, the condominium association fees, and the real estate taxes. It specified exactly which dock slip units were to be the subject of the sale. It was a writing signed by Smiley's duly authorized agent, Accetta. The inclusion in it of all the essential terms of the purchase and sale was sufficient to bring the agreement between Meyer and Smiley outside of the statute of frauds. As we said in *Durepo v. May,* 73 R.I. 71, 76, 54 A.2d 15, 18–19 (1947):

> "The statute does not require that a contract for the sale of land * * * must be in writing. * * * *Preble v. Higgins,* 43 R.I. 10[, 109 A. 707]. A memorandum to comply with the statute of frauds need contain only the substance of the contract or agreement and not a statement of all particulars. * * * In *Sholovitz v. Noorigian,* 42 R.I. 282, at page 285[, 107 A. 94], this court, speaking generally with reference to the adequacy of a memorandum, said: 'The note of memorandum sufficient to prevent the operation of the statute upon a contract for the sale of land need not have the formal precision usually found in a written contract or agreement. Such note or memorandum meets the requirements of the statute if it sets out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment if the sale is not for cash; and further such note or memorandum must be signed by the party to be charged in the action or by his agent lawfully authorized.' "

The fact that the May 24 letter referred to the drafting of a more formal written agreement by the buyer's attorney did not serve to negate the present existence of a valid agreement. In *Gel Systems, Inc. v. Hyundai Engineering & Construction Co.,* 902 F.2d 1024, 1027 (1st Cir.1990), the court held that "the fact that a writing refers to a formal document to be executed in the future does not automatically prevent the initial writing from being binding." We conclude that the May 24 letter from Accetta to the buyer's attorney, which contained all of the essential terms of the agreement, was sufficient to take the matter out of the statute of frauds.

 Since the statute of frauds was inapplicable in the instant case, there remained only a question of fact for the trial justice to consider, that being what additional terms were to be incorporated into the final written agreement. Because there existed that question of fact, the entry of summary judg-

ment was improper. "It is well settled that summary judgment is an inappropriate manner of disposition in cases where a question of fact exists." *Rose v. Cooper,* 588 A.2d 1359, 1361 (R.I.1991). The trial justice should have permitted the case to proceed and should have permitted the introduction of oral testimony and proof of what additional provisions were to be included in the final formal written agreement. *See Berube v. Montgomery,* 463 A.2d 158, 159 (R.I. 1983)(once the requirements of the statute of frauds are met, other elements may be supplied by oral agreement).

For the foregoing reasons the plaintiff's appeal is sustained, the final judgment below is vacated, and the papers in this case are remanded to the Newport County Superior Court for further proceedings consistent with this opinion.

GOLDBERG, J., did not participate.