DECISION
This matter comes before the Court on two dispositive motions. Defendants Antoinette Breed and Mary Chaves filed a motion for summary judgment pursuant to Super. R. Civ. P. 56. Plaintiff Duggan responded by filing an objection to the motion and a cross motion for summary judgment.
The Plaintiff John Duggan (plaintiff/buyer) brought suit against defendant Antoinette Breed and Mary Chaves (defendant), seeking specific performance of an agreement between the plaintiff John Duggan as buyer and the defendant as seller for the purchase and sale of the property, commonly known as 23 Memorial Boulevard and 2 Hayden Court, Newport, Rhode Island, owned by the defendant sellers. The facts relevant to the motions in question are not in dispute and for the instant purposes can be simplistically summarized as follows.
The plaintiff/buyer was attempting to buy the aforementioned property. Consequently, in order to begin the bargaining process, plaintiff/buyer submitted an offer to the defendant to buy the land on May 17, 2000. This offer was rejected in a letter dated July 7, 2000, whereby the defendants' attorney stated that his clients were declining plaintiff's offer. The letter went on to make a counter offer as follows: ". . .I have been authorized by [defendant] to make a counter offer to sell the property to Mr. Duggan for the sum of Four Hundred and Fifty Thousand Dollars ($450,000.00). If this offer is acceptable to you please sign this letter and return it to my attention and I will prepare the appropriate sales agreement." This letter was signed by defendant's attorney and subsequently signed by Duggan on July 12, 2000. The next day Duggan faxed the letter he had signed to the defendant's attorney.
Sometime between July 12, 2000 and July 21, 2000, defendant's counsel informed plaintiff/buyer that defendant did not wish to sell the property. As a result plaintiff/buyer filed an action for specific performance on August 7, 2000.
In support of the defense motion for summary judgment, defendants argue that the statute of frauds precludes enforcement of the agreement between plaintiff/buyer and the defendant for the sale of the property belonging to defendants. Specifically, the defendant argues that under the statute of frauds, the agreement in question is unenforceable because it disregarded essential terms, lacked the requisite intent, and was not made with the proper authority. Plaintiff/buyer refutes these arguments, countering that the agreement in question satisfied the statute of frauds as a matter of law, leaving any missing terms to be implied similarly, as a matter of law.
Summary judgment is "a drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute." Superior Boiler Works, Inc. V. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998) (citations omitted); R.I.Super. R. Civ. P. 56(c). The trial justice should "draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." Superior Boiler, 711 A.2d at 631. However, the nonmoving party has an affirmative duty to specifically set forth all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence v. Wilkie, 668 A.2d 650, 652 (R.I. 1996) (citation omitted). As such, the nonmoving party may not rest upon "allegations or denials in the pleadings, mere conclusions, or mere legal opinions" to create a genuine issue of material fact. Rhode Island DEPCO v. Rignanese,714 A.2d 1190, 1193 (R.I. 1998) (citations omitted). After reviewing the evidence in the light most favorable to the nonmoving party, the trial justice may grant a summary judgment motion if there are no genuine issues of material fact, and the moving party's claim warrants judgment as a matter of law. Harritos v. Cambio, 683 A.2d 359, 360 (R.I. 1996) (citations omitted); R.I.Super. R. Civ. P. 56(c).
Whether there exists a sufficient writing to satisfy the statute of frauds is a question of law for the Court. Simon v. Simon,35 Mass. App. Ct. 705, 709 (1994). Defendant first contends that a contract was not consummated because the agreement in question lacked essential terms and therefore fell short of satisfying the statute of frauds. "A memorandum to comply with the statute of frauds need contain only the substance of the contract or agreement and not a statement of all particulars." Durepo v. May, 73 R.I. 71, 76, 54 A.2d 15, 18 (1947). Moreover, in Sholovitz v. Norigan, 42 R.I. 282, 107 A. 94 (1919), the Court, speaking in regard to the adequacy of a memorandum satisfying the statute of frauds, stated:
 "The note of memorandum sufficient to prevent the operation of the statute upon a contract for the sale of land need not have the formal precision usually found in a written contract or agreement. Such note or memorandum meets the requirements of the statute if it sets out who are the seller and the buyer, the respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment of the sale if not for cash, and further, such note or memorandum must be signed by the party to be charged in the action or by his agent lawfully authorized." Id. 42 R.I. at 285, 107 A. at 95 (1919).
In the instant case, the letter sent to plaintiff/buyer and subsequently signed and returned, contained identification of seller and buyer, description of subject matter, purchase price, and the signature of the party to be charged. Defendant, however, argues that "essential" terms are missing such as closing date, amount of deposit, terms of payment, whether the price included furnishings, and whether current leases would be renewed. In support of this proposition, defendant relies on Sholovitz and UXB Sand and Gravel, Inc. v. Rosenfeld Concrete Corporation at al., 641 A.2d 75 (R.I. 1994), neither of which opine that the aforementioned terms are in any way essential in fulfilling the requirements of the statute of frauds.
The defendants also argue that neither party has manifested an objective intent to promise or be bound. See Smith v. Boyd, 553 A.2d 131, 133 (R.I. 1989) (contract exists when each party has manifested an objective intent to promise or be bound). A writing devoid of such intent fails to prove the existence of a contract. Sholovitz, 42 R.I. 282, 285,107 A. 94, 95 (1919) (writing must manifest respective intention to sell and to purchase to satisfy statute of frauds).
The defendant relies heavily on UBX to demonstrate that the letter of July 7, 2000 did not express an intention to be bound. However, the facts of that case are clearly distinguishable from the present facts. In UBX, the sellers had also sent a letter to the buyer, but unlike the present case, the letter evidenced disagreement over what cash deposit, if any, was required. UXB, 641 A.2d at 79. In this regard, the letter merely reflected a problem that had plagued the parties throughout their negotiations and conveyed that the sellers possessed no intent to be bound. Id. Contrastingly, the letter of July 7, 2000 in the present dispute contained no evidence of disagreement at all, over any terms.
Furthermore, the defendant argues that because the letter of July 7, 2000 contemplated a future written agreement, the parties could not have intended to be bound. As authority, the defendant cites to UXB and Smith. Reliance on these cases, however, is misplaced. The Court in UXB dealt with a situation where not only did the letter express disagreement, but it also stated that the sellers looked forward to consummating the purchase and sale of the property at some future date. UXB, 641 A.2d at 79. It was when the Court looked at these circumstances in conjunction with one another that it found an indication that the sellers did not intend to be bound prior to the execution of a formal contract. Id. Indeed, the Supreme Court of Rhode Island in Greensleeves v. Smiley, 694 A.2d 714 (R.I. 1997), (quoting GEL Systems, Inc. v. Hyundai Engineering and Construction Co., 902 F.2d 1024, 1027 (1st Cir. 1990)), stated "the fact that a writing refers to a formal document to be executed in the future does not automatically prevent the initial writing from being binding." Id. at 716.
The defendant would seek to distinguish Greensleeves on the basis that the letter in that case contained more terms than the letter in the present case, hence making reference to a future agreement less probative on the issue of intent. Among the listed terms the defendant references are rental terms, condominium association fees, and the real estate taxes. This argument must fail due to the fact that in Sholovitz, the Court omitted these terms from its list of that which meets the statute of frauds. In addition, the Court in Durepo v. May, 73 R.I. 71, 54 A.2d 15
(1947), stated "Does the fact that here the purchase price was to be paid by a down payment and installments make a difference? In our judgment the omissions under consideration are matters of detail, which, if not inferable from the language of the option itself, could be supplied by oral evidence." Id. at 77, 19. Therefore, the additional terms in the Greensleeves letter are mere surplusage and do not serve to effectively distinguish that case from the present one. As a result, this Court follows the rule of law that was enunciated in Greensleeves regarding reference to future instruments and the effect it has upon the intent to contract.[1]
The defendant also relies on language in Smith, 553 A.2d 131 (R.I. 1989), wherein the Court stated that if a party "neither had nor signified such an intention to close a contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed." Id. at 134. If in the instant case, the agreement of July 7, 2000 were oral, as it was in Smith, then perhaps that case would be pertinent to a determination in the present case. In the case at bar, however, the agreement of July 7, 2000 was in writing and signed by both parties. This fact renders the reference to a future written instrument far less significant than it was deemed to be in Smith. Indeed, the Court also stated in Smith, "If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted." Id. at 133. Looking again to the facts of the instant case, the parties both signed a letter which unequivocally stated that it was a counteroffer, the acceptance of which could be manifested through a signature. Such a clear expression of intent should not be considered superfluous merely because it is accompanied by reference to a future written instrument.[2] Moreover, when the expression of intent to contract is this pure and unadulterated, the policy pronounced in Smith, namely that parties be able to negotiate without fear that they will be bound by mere discussion, is clearly not offended. Id. at 134.
Finally, the defendant argues that the letter of July 7, 2000 fails to satisfy the statute of frauds because defendant's attorney did not have the authority needed to bind the defendant as principal. While defendant's attorney did not have written authority to enter into the agreement, it is well settled in Rhode Island that an agent's authority to bind the principal need not be in writing. Preble v. Higgins,43 R.I. 10, 14, 109 A. 707, 709 (1920). In addition, it is clear from defendant Mary Chaves's deposition transcript that she expressly told the attorney that he could send the letter of July 7, 2000. Therefore, it is clear from the record that the attorney had actual authority in the present case.
This Court acknowledges the simplicity of the agreement entered into between the parties on July 7, 2000. However, concerning the statute of frauds, it is deficiency and not simplicity that would allow this Court to negate the existence of a contract as a matter of law. The Court in Sholovitz and Durepo has set forth the essential requirements of the statute of frauds. All remaining terms — closing date, assumptions of leases, furnishings, adjustments — are implied as a matter of law. "Where the parties fail to stipulate to such matters, it is reasonable to infer that they intended to follow the ordinary practice in the sale of real property under similar circumstances." Durepo v. May,73 R.I. 71, 77 (1947). "In the absence of stipulation it is ordinarily held that a contract for the sale of land is to be performed within a reasonable time." Id. at 75. Additionally, "[i]f . . . the sale were for cash . . . no doubt the parties would be held to have intended that the title be passed in the ordinary way, that is, that the delivery of the deed and the payment of the purchase price were to be concurrent acts." Id. at 77. In the absence of qualifying terms, payment must be in cash. Sholovitz, 42 R.I. at 285-286, 107 A.2d at 95.
Consequently, the absence of these terms in the letter of July 7, 2000 is not fatal to the existence of a binding contract as a matter of law. However, what a reasonable time should be under the circumstances of this case, is an issue of fact which the parties may litigate should they choose to have the issue tried before the fact finder. "It is well settled that summary judgment is an inappropriate manner of disposition in cases where a question of fact exists." Greensleeves, 694 A.2d at 717, (quoting Rose v. Cooper, 588 A.2d 1359, 1361 (R.I. 1991)); See Berube v. Montgomery, 463 A.2d 158, 159 (R.I. 1983) (once the requirements of the statute of frauds are met, other elements may be supplied by oral agreement). Furthermore, any other missing terms within the contract will be determined based on what ordinary practice dictates in the sale of real property. Due to the fact that this inquiry will necessarily involve questions of fact, this Court partially grants the plaintiff/buyer's ("Duggan's") motion for summary judgment as the letter in issue satisfies the statute of frauds as a matter of law, there being a binding and enforceable contract as a result.
For the reasons set forth above, Duggan, the plaintiff and buyer, is entitled to specific performance of the July 7, 2000 agreement. Accordingly, defendants' motion for summary judgment, as well as their motion for attorney's fees, is denied. Plaintiff/buyer's motion for summary judgment is granted in part and denied in part, leaving only the factual issue of what additional contract terms are reasonable under the circumstances. Counsel shall submit the appropriate judgment for entry after notice.
[1] The defendant also tries to distinguish Greensleeves from the present case based on the fact that the parties in Greensleeves orally agreed that the letter be used as the purchase and sale agreement. This point of distinguishment, however, seems insignificant in light of the fact that to place upon contracting parties the burden of orally agreeing that every written contract was to be the actual agreement would prove burdensome and stifling.
[2] The defendant also argues that because plaintiff/buyer tried to negotiate with the defendant after the filing of this lawsuit, he somehow could not have intended to be bound by the letter of July 7, 2000. This argument contravenes the concept that the intent to contract and the intent to possibly settle a lawsuit are divergent issues. Indeed, according to Rule of Evidence 408 and public policy, parties should be encouraged to settle lawsuits without the fear that such negotiations will later work to their detriment.