**David J. CAITO**

v.

**Mauro JUAREZ, alias and General Dry Wall Services, Inc.**

**No. 2001-9-Appeal.**

Supreme Court of Rhode Island.

May 3, 2002.

Clinton L. Poole, Providence, for plaintiff.

Kevin R. Horan, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, David J. Caito (Caito or plaintiff), has appealed a judgment in favor of the defendants, Mauro Juarez, alias (Juarez), and General Drywall Services, Inc. (GDS) (collectively, defendants), in this action for specific performance of a contract for the sale of real estate.[1] This case came before the Supreme Court for oral argument on April 8, 2002, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. Having reviewed the record and the memoranda of the parties, and having heard the oral arguments of counsel, we conclude that cause has not been shown, and we summarily affirm the judgment of the Superior Court.

Caito owns an automobile upholstery installation business in North Providence, Rhode Island, which is adjacent to the property in dispute. According to Caito, on September 20, 1997, he entered into a contract with Juarez and GDS to purchase

---

1. By the time of trial, Mauro Juarez had been placed under the guardianship of his wife, Annabella Juarez. In June 2000, Annabella Juarez was substituted for Mauro Juarez as a defendant in this matter, in both his individual capacity and as the sole stockholder and corporate officer of the defendant, General Drywall Services, Inc.

defendants' land,[2] with the intention of expanding his upholstery business. It was undisputed that, on that date, Caito and defendants signed and executed an "Agreement of Sale" for the subject property, and Caito gave Juarez a deposit of $1,000 toward the purchase price. Before any closing occurred, Caito was given keys to the property, and he began to use the property as storage space. On December 23, 1997, Caito testified that Juarez came to Caito's office and demanded $10,000 toward the purchase price. When Caito refused, Juarez said, "The deal is off." Subsequently, Caito removed his belongings from the property and returned the keys to Juarez, who returned Caito's deposit of $1,000.

Caito testified that he attempted to schedule a closing for December 31, 1997, but Juarez failed to appear. That same day, Caito filed suit against Juarez and GDS, claiming breach of contract and requesting specific performance, monetary damages and attorney's fees, and he recorded a notice of *lis pendens* against the property. On September 29, 2000, a bench trial was held before a justice of the Superior Court. During closing argument, defendants argued that plaintiff had failed to produce evidence that the parties agreed to an essential element of the contract, namely, the terms of payment. The defendants pointed to paragraph 4.c. of the agreement of sale, which provided in relevant part:

> "The remainder of the purchase price in the amount of FIFTY THOUSAND ($50,000.00) DOLLARS shall be paid by a promissory note secured by a first mortgage on the demised premises for such period and *under such terms as the Seller and Buyer shall agree to and*

> *which is contained in that certain memorandum attached hereto and incorporated herein.*" (Emphasis added.)

It was undisputed that no memorandum was attached to the agreement of sale. The plaintiff moved to reopen the case to present evidence on the missing terms of payment. The trial justice denied the motion, and judgment was entered in favor of defendants. This appeal followed.

On appeal, plaintiff argued that the trial justice erred in finding that the agreement lacked essential terms and, alternatively, contended that the trial justice abused his discretion by denying plaintiff's motion to reopen the case to present evidence on the terms of payment. In rendering his decision, the trial justice stated:

> "The reason the Court is entering the judgment for the defendant[s] is that there was no evidence before the Court with respect to the terms and conditions of the note and mortgage which are contemplated by the provisions of paragraph 4C of the purchase agreement which cover a substantial portion of the purchase price to be paid for this property.

> "The Court has declined at this juncture after the closing of evidence to permit the plaintiff to reopen the case to fill the hole. * * *

> "And it's without question that the terms and conditions of that note and the mortgage—the only thing we know about from the record is that the note was to be for $50,000 and that the mortgage was to be a first mortgage. The rate of interest, if any, the term, whether a bullet payment at some point or monthly payments, we have no idea.

**2.** Title to the disputed property was held by GDS, of which Juarez was the sole stockholder.

This Court cannot write the agreement for the parties."

We affirm.

■ It is well established that in order for a court to award specific performance of a real estate contract, "the essential terms of the contract must be clear, definite, certain, and complete." 71 Am. Jur.2d *Specific Performance* § 34 (2001); *see also St. Lawrence v. Reed,* 74 R.I. 353, 356–57, 60 A.2d 734, 735–36 (1948) (affirming trial justice's denial of specific performance where terms of the agreements "were general, indefinite and uncertain and left important matters of detail to conjecture or to be supplied by the court").

In *Greensleeves v. Smiley,* 694 A.2d 714 (R.I.1997) (per curiam), this Court identified the terms essential to bring a written agreement for the sale of real estate outside the statute of frauds:

"Such note or memorandum meets the requirements of the statute if it sets out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, *and the terms of payment if the sale is not for cash." Id.* at 716 (quoting *Durepo v. May,* 73 R.I. 71, 76, 54 A.2d 15, 18–19 (1947)). (Emphasis added.)

In this case, paragraph 4.c. of the agreement of sale provided for a portion of the purchase price to be paid by the buyer directly to the seller, the remainder to be paid "by a promissory note secured by a first mortgage on the demised premises for such period and under such terms as the Seller and Buyer shall agree to and which is contained in that certain memorandum attached hereto and incorporated herein." No memorandum was attached to the agreement. We are of the opinion that the agreement of sale between Caito and defendants was uncertain as to essential terms, specifically, the terms of the promissory note and mortgage. *See Greensleeves,* 694 A.2d at 716; *see also* 71 Am.Jur.2d *Specific Performance* § 53 (2001). Therefore, the trial justice did not err in refusing to grant specific performance of the agreement.

■ We next address whether the trial justice abused his discretion in refusing to reopen the case so that Caito could present evidence of the missing terms. "[T]he decision concerning whether a party may be permitted to reopen its case to present additional evidence is within the sound discretion of the trial justice. These decisions will be disturbed on appeal only when an abuse of discretion is shown." *Allen v. Skelding,* 634 A.2d 859, 860 (R.I. 1993) (quoting *Prescott v. Veri,* 507 A.2d 453, 455 (R.I.1986)). In *Allen,* the plaintiffs in a personal injury action failed to present evidence of causation, an essential element of their claim, and the trial justice granted the defendants' motion for a directed verdict. *Id.* On appeal, this Court held that the trial justice abused her discretion in refusing to reopen the case to allow plaintiffs to present evidence on the issue. *Id.* We noted that denial of the motion resulted in "severe" prejudice to the plaintiffs because, "[t]he testimony offered, if the plaintiffs had been allowed to reopen, in all likelihood would have warranted a denial of the motion for directed verdict." *Id.* at 860–61. At the same time, we noted that the granting of the motion "would have resulted in only minimal trial dislocation." *Id.* at 860.

In this case, the plaintiff moved to reopen the case to present evidence with respect to the terms of the proposed mortgage. The plaintiff made an offer of proof that Caito would testify that the parties had agreed to terms of the mortgage and that the plaintiff's lawyer had drawn up a document based on that agreement. The

plaintiff also sought to introduce a copy of the mortgage prepared by the plaintiff's attorney. The defendants objected on the ground that the document was prepared unilaterally, without the defendants' approval. Significantly, it was undisputed that the proposed memorandum had not been signed by the parties. In ruling for the defendants, the trial justice pointed out that, even if the document prepared by the plaintiff's attorney were admitted, "inspection [of the document] never was sought so that we don't know nor could any one know whether or not they were in the terms that were agreed to. * * * This Court cannot write the agreement for the parties." Therefore, even if the plaintiff had been permitted to introduce the proffered evidence, the unsigned memorandum would not have altered the outcome of the case. Consequently, the trial justice did not abuse his discretion in denying the motion to reopen.

For the foregoing reasons, we deny and dismiss the plaintiff's appeal, and we summarily affirm the judgment of the Superior Court, to which we return the papers in the case.